IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LNV CORPORATION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 15-3219 |
| | : | |
| v. | : | |
| | : | |
| SALVATORE CATALANO and SUSAN CATALANO, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                          August 19, 2015

The plaintiff brought this mortgage foreclosure action after the defendants defaulted on a business loan secured by, *inter alia*, a mortgage on a multifamily apartment building located in Portland, Pennsylvania.  Although the plaintiff served the defendants with the summonses and copies of the complaint, the defendants have neither appeared nor taken any action in defense of the claims raised in the complaint.  The clerk of court entered default against the defendants for their failure to respond to the complaint, and the plaintiff now moves for a default judgment.  Although the court favors having a matter heard on the merits, the court's review of the factors applicable when considering a motion for a default judgment demonstrates that the entry of a default judgment is the appropriate result in this action.  Accordingly, the court will grant the motion for a default judgment.

## I.        ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, LNV Corporation, commenced this mortgage foreclosure action by filing a complaint against the defendants, Salvatore Catalano and Susan Catalano, on June 8, 2015.  *See* Compl. in Mortgage Foreclosure ("Compl."), Doc. No. 1.  In the complaint, the plaintiff alleges

that on or about July 21, 2009, Nova Savings Bank ("Nova") loaned $450,000 to the defendants pursuant to a business loan agreement. *Id.* at ¶ 6 & Ex. A.  As part of this agreement, the parties entered into a promissory note in the original principal amount of $450,000 (the "Note"). *Id.* at ¶ 7 & Ex. B.  The Note provided that the defendants would repay the $450,000 loan in 59 installments of $3,805.90 and "one irregular last payment" on August 1, 2014, in the estimated amount of $399,245.09. *Id.* at Ex. B, Note at 1.

To secure the payment of the sums due under the Note, the defendants executed to Nova a mortgage (the "Mortgage") for the defendants' premises at 110-112 State Road, Portland, Pennsylvania 18351 (the "Mortgaged Premises"). *Id.* at ¶¶ 7-9, 14 and Ex. C.[1]  In addition to securing payment due under the Note through the Mortgage, Nova and the defendants entered into an assignment of rents agreement on July 21, 2009 (the "Rents Assignment"). *Id.* at ¶ 10 & Ex. E.[2]  The Mortgage and the Rents Assignment were assigned to the plaintiff on August 25, 2014. *Id.* at ¶¶ 11, 12 & Exs. F, G.[3]

Although the plaintiff obtained the security under the Mortgage and Rents Assignment, the defendants also provided it with a security interest in, *inter alia*, the furniture, fixtures, and things on the Mortgaged Premises. *Id.* at ¶ 13.  This additional security was more specifically

---

[1] The Mortgage was recorded with the Recorder of Deeds for Northampton County on August 24, 2009, as Instrument Number 2009030576 in Book 2009-1, Page 218442.  Compl. at ¶ 8.

[2] The Rents Assignment was recorded on September 17, 2014.  Compl. at ¶ 10.

[3] The assignments of the Mortgage and Rent Assignments were recorded with the Recorder of Deeds on September 17, 2014, in Book 2014-1, Page 160629 and Book 2014-1, Page 160632, respectively.  Compl. at ¶¶ 11, 12.

The court notes that the written assignments of the Mortgage and Rents Assignment indicate that the Federal Deposit Insurance Corporation ("FDIC") assigned the Mortgage and Rents Assignment to the plaintiff. Compl. at Exs. F, G.  It appears that the FDIC "was appointed receiver of Nova Bank on October 26, 2012, and . . . pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1811 *et seq.* ("FIRREA"), FDIC[] succeed[ed] to all rights, titles, powers and privileges of the insured depository institution." *Reisinger v. Connor*, No. 3:13-CV-2117, 2012 WL 6588759, at *1 (M.D. Pa. Dec. 17, 2012) (internal quotation marks omitted); *see also* Failed Bank Information: Information for NOVA Bank, Berwyn, PA, https://www.fdic.gov/bank/individual/failed/novabank.html (last visited August 17, 2015) (indicating that "[o]n Friday, October 26, 2012, the Pennsylvania Department of Banking and Securities closed NOVA Bank, Berwyn, PA and the Federal Deposit Insurance Corporation (FDIC) was named Receiver").

identified in a UCC-1 Financing Statement filed with the Secretary of State of the Commonwealth of Pennsylvania on June 1, 2015. *Id.* at ¶ 13 & Ex. H.

The defendants defaulted on their obligations under the aforementioned loan documents when they failed to pay the sums due under the loan when the loan matured on August 1, 2014. *Id.* at ¶ 16. The defendants also defaulted under the Mortgage when they filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Pennsylvania. *Id.* at ¶¶ 17-19.[4]

As of June 5, 2015, the defendants owed an outstanding balance of $466,961.49, which included principal, accrued interest, fees, costs, and other expenses, and negative escrow). *Id.* at ¶ 21. In addition, the defendants owe $143.23 in *per diem* interest from June 6, 2015 onward and the plaintiff's attorney's fees and costs. *Id.*

The clerk of court forwarded summonses for the defendants to the plaintiff on June 8, 2015, and the plaintiff served the defendants with the summonses and copies of the complaint on June 16, 2015. *See* Proof of Service, Doc. Nos. 3, 4. On June 30, 2015, the plaintiff filed an emergency petition to appoint a receiver. Doc. No. 5. On July 1, 2015, the court entered an order (1) scheduling an evidentiary hearing on the emergency petition for July 6, 2015, (2) providing the defendants with the opportunity (until 9:00 a.m. on the date of the hearing) to file a response, and (3) requiring the plaintiff to serve a copy of the order on the defendants and their bankruptcy counsel. Doc. No. 6. The plaintiff filed a certificate of service on July 2, 2015, in which it described its service of the July 1, 2015 order on the defendants and their bankruptcy counsel. Doc. No. 7.

---

[4] The bankruptcy court granted the plaintiff relief from the automatic stay on January 28, 2015. Compl. at ¶ 20 & Ex. I.

On July 6, 2015, the court held an evidentiary hearing on the emergency petition. Doc. No. 9. The defendants neither responded to the emergency petition nor appeared at the hearing. After the hearing, the plaintiff filed a certification of counsel containing (1) the results of counsel's court-requested inquiry of the trustee of the bankruptcy proceedings involving the defendants, (2) an affidavit of Stuart L. Miles, portfolio manager for CLMG Corp, the plaintiff's loan servicer, and (3) photographs of the Mortgaged Premises taken on June 12, 2015. Doc. No. 10. On July 7, 2015, the court granted the relief sought in the emergency petition and appointed Altman Management Company as a receiver for the real and personal property located at the Mortgaged Premises. Doc. No. 11.

Although the defendants had until July 7, 2015, to file a response to the complaint, they never filed a response. On July 9, 2015, the plaintiff filed a request that the clerk of court enter default against the defendants for their failure to respond to the complaint. Doc. No. 12. On that same date, the clerk of court entered default against the defendants. *See* Unnumbered Docket Entries Between Doc. Nos. 12 and 13. The plaintiff then filed the instant motion for a default judgment on July 16, 2015. Doc. No. 13.[5] Once again, despite the plaintiff having served the defendants with copies of the motion by certified mail, return receipt requested and regular mail, the defendants have not responded to the motion.

On August 11, 2015, the court entered an order requiring the plaintiff to supplement the allegations of subject-matter jurisdiction in the complaint by filing an affidavit with the court. Doc. No. 14. The plaintiff filed an affidavit in support of its jurisdictional allegations on August 12, 2015. Doc. No. 15. With this affidavit, the motion seeking a default judgment is ripe for disposition.

---

[5] In between the date the clerk of court entered default and the plaintiff filing the motion for a default judgment, Altman Management Company posted a receiver's bond of $50,000. *See* Unnumbered Docket Entry Between Doc. Nos. 12 and 13.

## II.      DISCUSSION

### A.      Standard – Motions for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs the entry of a default judgment. Rule 55(a) indicates that the clerk of court "must enter" default against a party "whom a judgment for affirmative relief is sought" when the party "has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Rule 55(b) then provides the procedure and requirements for the entry of a default judgment by the clerk of court or the court. Fed. R. Civ. P. 55(b).

The clerk of court's entry of default under Rule 55(a) because of a party's failure to respond is the first step and a prerequisite before the party seeking a "judgment for affirmative relief" can attempt to move for the entry of a default judgment under Rule 55(b). *See Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) ("[E]ntry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)."). Once the clerk of court enters default, and if the case is one in which the plaintiff's claim is not for a "sum certain or a sum that can be made certain by computation," the plaintiff can proceed to the second step and seek to have the court enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2) (indicating that in all cases not involving a "plaintiff's claim . . . for a sum certain or a sum that can be made certain by computation," the moving party "must apply to the court for a default judgment"). After a party applies to the court for a default judgment, the court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: **(A)** conduct an accounting; **(B)** determine the amount of damages; **(C)** establish the truth of any allegation by evidence; or **(D)** investigate any other matter." *Id.*

Even if the clerk of court enters default against a party, the district court retains the discretion whether to enter a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (explaining that appellate court reviews district court's entry of default judgment for abuse of discretion). In addition, default judgments are generally disfavored over a resolution of a case on the merits. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable."); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984) (stating that the Third Circuit "does not favor entry of defaults or default judgments").

Under applicable Third Circuit jurisprudence, a district court must consider three factors in determining whether to grant a default judgment: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citation omitted).[6] Courts in this district have also considered other factors, including, *inter alia*, whether the court has subject-matter jurisdiction and personal jurisdiction, whether service of process was proper, and whether the complaint establishes a legitimate cause of action against the defendant. *See, e.g.*, *Jimenez v. Rosenbaum-Cunningham, Inc.*, No. 07-1066, 2010 WL 1303449, at *4 (E.D. Pa. Mar. 31, 2010) (stating that "as a threshold matter [before entering default judgment,] we must

---

[6] Because *Chamberlain* is a published decision that is binding on this court, the court must follow it in analyzing the instant motion. Nonetheless, the court notes that the Third Circuit (albeit in an unpublished opinion) has recognized that "*Chamberlain*, perhaps counterintuitively, applies this three-part test to the motion seeking a default judgment whereas the case on which *Chamberlain* relies-*$55,518.05 in U.S. Currency*-sets out the test in the context of a motion to overturn a default judgment." *Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003). As the Honorable Marjorie O. Rendell noted in a concurring opinion in *Hill*, the *Chamberlain* court

> may have unwittingly imposed an unrealistic and misplaced burden on plaintiffs, and unduly constrained the discretion of district courts. For instance, it makes little sense for a plaintiff to be required to demonstrate that a defendant does not have meritorious defenses when the defendant has failed to respond. As I see it, a defendant moves to set aside the default judgment because it asserts it has meritorious defenses.

*Id.* at 53 (Rendell, J., concurring).

determine whether the [complaint] establishes a legitimate cause of action" and, after reaching this determination, "we should also ensure that we have both personal and subject matter jurisdiction"); *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) ("[A]s a threshold matter [before entering default judgment], the court must first satisfy itself that it has personal jurisdiction over the party against whom default judgment is requested.").

Additionally,

[t]he court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, as well as all reasonable inferences that can be drawn therefrom. Conclusory allegations and the parties' legal theories or conclusions of law, however, are not entitled to the same presumption and are not deemed admitted.

*State Farm Fire & Cas. Co. v. Hunt*, No. CIV. A. 14-6673, 2015 WL 1974772, at *3 (E.D. Pa. May 4, 2015) (internal citations omitted).

### B.   Analysis

After reviewing the above-referenced factors, the entry of a default judgment is the proper resolution of this case. Regarding subject-matter and personal jurisdiction, the plaintiff asserts that the court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. Compl. at ¶ 5. As indicated in the complaint and in the plaintiff's affidavit in support of its allegations of subject-matter jurisdiction, the plaintiff is a citizen of Texas and Nevada. *See* Compl. at ¶ 1; Affidavit of Pl.'s Counsel in Supp. of Subject Matter Jurisdiction ("Jurisdictional Aff.") at ¶ 11, Doc. No. 15. The defendants are citizens of the Commonwealth of Pennsylvania. Jurisdictional Aff. at ¶¶ 2-10 & Exs. A-D. Because the parties are completely diverse and the amount in controversy exceeds the $75,000 threshold, the court has subject-matter jurisdiction over this matter under section 1332(a)(1).

As for personal jurisdiction, the court has general personal jurisdiction over the defendants as they are domiciled in the Commonwealth of Pennsylvania. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) ("For an individual, the paradigm forum for the exercise of general [personal] jurisdiction is the individual's domicile[.]"). Nonetheless, the court recognizes that the plaintiff must have properly served process before the court obtains personal jurisdiction over the defendants. *See Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case."). Here, the plaintiff filed proofs of service on June 22, 2015, stating that the plaintiff's process server personally served the summonses and copies of the complaint upon the defendants at their residence located at 162 Analomink Street in East Stroudsburg, Pennsylvania on June 16, 2015, at 2:45 p.m. *See* Doc. Nos. 3, 4. Therefore, the plaintiff appears to have properly served the defendants. *See* Fed. R. Civ. P. 4(e)(2)(A) (stating that service upon an individual within a judicial district of the United States may be effected by "delivering a copy of the summons and of the complaint to the individual personally").

Concerning the legitimacy of the cause of action, the complaint alleges that the defendants executed various documents, including the business loan agreement, the Note, the Mortgage, and the Rents Assignment, in connection with a $450,000 loan. The FDIC, as the receiver for Nova, assigned its legal interests in the Mortgage and Rents Assignment to the plaintiff. Therefore, the plaintiff is the proper party to bring this action.

The plaintiff alleges that the defendants defaulted on their obligations under the loan documents by (1) failing to pay the sums due under the loan when it matured on August 1, 2014, and (2) filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The loan

agreement, Mortgage, Note, and Rents Assignment all contain identical language about the events that constitute a default.  All of the loan documents provide that a default occurs if the defendants "fail[] to make any payment when due under the [Note, Loan, or Indebtedness]" or "commence[] . . . any proceeding under any bankruptcy or insolvency laws by or against [them]."  *See* Compl. at Ex. A, Loan Agreement at 4, Ex. B, Note at 1, Ex. C, Mortgage at 9, and Ex. D, Rents Assignment at 4.  Thus, the defendants' failure to pay the amount due on August 1, 2014, and their bankruptcy filing constitute events of default under the loan documents. Accordingly, the complaint alleges a legitimate cause of action in mortgage foreclosure for the defendants' default under the loan documents.

Regarding the application of the *Chamberlain* factors, the first factor is satisfied and strongly supports granting the motion for a default judgment because the court finds that the plaintiff would be prejudiced if the court denies the motion seeking a default judgment. Although the court previously appointed a receiver to maintain the property and assist with the collection of rents to apply them to the outstanding indebtedness or to property maintenance, the plaintiff has previously demonstrated that the defendants have failed to care for the property. This creates significant issues with the main parcel and accessory items serving as collateral for the loan to the defendants.  Any further delay in resolving this case will merely further prejudice the plaintiff's attempt to recover the outstanding debt owed to it.

As for the second factor, "the court may presume that an absent defendant who has failed to answer has no meritorious defense, because [i]t is not the court's responsibility to research the law and construct the parties' arguments for them."  *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271-72 (E.D. Pa. 2014) (internal citations and quotation marks omitted). Nonetheless, the defendants appear to have no litigable defense to their defaulting under the loan

documents. The plaintiff appears to have a proper assignment of the Mortgage and Rents Assignment, and the defendants granted the plaintiff a security interest in, among other things, equipment, fixtures, and other articles of personal property located at the Mortgage Premises. Moreover, the defendants' events of default are evident and, at least as to the filing of the bankruptcy petition, are supported by a review of the bankruptcy court docket. Thus, the second *Chamberlain* factor strongly supports granting the motion for a default judgment.

Concerning the final factor, for the court to find that the defendants exhibited culpable conduct, they would have had to act "willfully or in bad faith." *See Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983) (explaining that analysis of whether failure of counsel to timely answer complaint was culpable "means actions taken willfully or in bad faith" (citation omitted)). Trial courts have reached different conclusions regarding whether a defendant's failure to appear and defend can, in itself, constitute culpable conduct. *See Hunt*, 2015 WL 1974772 at *5 (discussing different court conclusions on this issue). In this regard,

> [s]ome courts have held that the [culpable conduct] factor to be neutral where the court has no information relating to the motivations of the defendant in failing to appear and defend[, and o]ther courts have found that the defendant's failure or refusal to engage in the litigation process and to offer no reason for this failure or refusal may qualify as culpable conduct with respect to the entry of a default judgment-indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative.

*Id.* (internal citations and quotation marks omitted).

The court has already detailed the defendants' dilatory conduct in this case in failing to file a response to the complaint, a response to the motion for the appointment of a receiver, or even to the instant motion for a default judgment. The court attempted to ensure that they received notice of the motion for the appointment of a receiver, even going so far as to require the plaintiff to communicate with the defendants' bankruptcy counsel, but they still did not

appear or respond.  There is nothing in the record to indicate that the defendants' delay in acting in this case is due to anything other than deliberate action, which should constitute culpable conduct and weigh in favor of a default judgment.  Even if the plaintiffs' failure to appear and defend is not culpable conduct, this factor would be neutral and, in light of the strength of the other factors favoring a default judgment, would not prevent the court from entering a default judgment in this case.

### III.    CONCLUSION

As explained above, the court has subject-matter jurisdiction over this action and personal jurisdiction over the defendants.  The plaintiff properly served the summonses and copies of the complaint on the defendants, and it also properly served the defendants with the motion for a default judgment.  The plaintiff has asserted a legitimate cause of action in mortgage foreclosure.  Additionally, the court's analysis of the *Chamberlain* factors favors the entry of a default judgment as the first two factors strongly favor the entry of a default judgment even if the final factor is neutral.  Accordingly, the court grants the motion for a default judgment in favor of the plaintiff and against the defendants.

An appropriate order follows.

BY THE COURT:


/s/ *Edward G. Smith, J.*
EDWARD G. SMITH, J.